**EAST JEFFERSON COALITION FOR LEADERSHIP AND DEVELOPMENT, et al.**

v.

**The PARISH OF JEFFERSON, et al.**

**Civ. A. No. 86–3668.**

United States District Court, E.D. Louisiana.

Jan. 19, 1989.

J. Anthony Moscona, Metairie, La., Ronald Wilson, Alice Jacobs, Terrie E. Allbritton, New Orleans, La., for plaintiffs.

Harry A. Rosenberg, New Orleans, La., for defendants.

Anthony S. Taormina, Metairie, La., pro se.

## PROPOSED ORDER

BEER, District Judge.

In July, 1988, this court expressed the view that the present councilmanic structure of the Jefferson Parish Council does not fully comport with Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. section 1973, *et seq.* The court also expressed the view that plaintiffs' proposed remedy was unacceptable. Accordingly, both plaintiffs and defendants were asked to submit alternative redistricting plans for further consideration. They were received on December 14, 1988.

For the following reasons, I propose to adopt defendants' plan, as modified, and set a hearing for March 2, 1989 at 10:00 a.m. for interested parties to show cause why the plan should not be finally adopted.

■ This court is not free to implement any plan it pleases. Nor is it free to consider equally the plans submitted. The legislative body charged with the basic charter-invoked responsibility must be given the first opportunity to devise an acceptable remedial plan. *See White v. Weiser,* 412 U.S. 783, 794–95, 93 S.Ct. 2348, 2354–55, 37 L.Ed.2d 335 (1973). Devising a plan is a legislative task of the parish council that this court must try not to preempt. *Wise v. Lipscomb,* 437 U.S. 535, 539, 98 S.Ct. 2493, 2496, 57 L.Ed.2d 411 (1978); *Wyche v. Madison Parish Police Jury,* 635 F.2d 1151, 1158 (5th Cir.1981). Once that body submits a plan, the court should limit its role to considering whether the proffered plan is legally acceptable. *Lipscomb,* 437 U.S. at 540, 98 S.Ct. at 2497; *See Weiser,* 412 U.S. at 795, 93 S.Ct. at 2354; *Cook v. Luckett,* 735 F.2d 912, 920–21 (5th Cir.1984) (The district court's rejection of legislative proposals under Section 2 was reversed).

■ In *Cook,* the Fifth Circuit reiterated the tenet that courts should defer to the relevant legislative body in reviewing redistricting plans. It emphasized that even when a district court is presented with a plan containing statutory or constitutional flaws if those flaws are capable of correction the Court must minimize violence to the legislative policies embodied in the plans by changing them only to the most limited extent necessary to cure such flaws. *Cook,* 735 F.2d at 918–19. Only when the legislative plan is "uncorrectably invalid" should the court consider a scheme submitted by a private litigant or formulate its own plan.[1] *Cook,* 735 F.2d at 918, (referring to the mandate of the Supreme Court in *Upham v. Seamon,* 456 U.S. 37, 102 S.Ct. 1518, 71 L.Ed.2d 725 (1982) (per curiam)).

The proposal submitted by defendants creates six single member districts. Aside from six single member districts, wherein one council member would be elected from each of the six single member districts, the plan provides that two councilmen shall be elected "quasi-at-large", *i.e.,* one councilman from the East-bank districts, districts

---

1. Only in such cases is a "heightened obligation" imposed upon the district court to achieve a greater degree of population equality and avoid the use of multi-member districts. *Cook,* 735 F.2d at 918.

4, 5, and 6, and one councilman from the West-bank districts, 1, 2, and 3. Additionally, one council member would be elected at-large, from the entire parish.

Defendants' plan is the legislative response of the Jefferson Parish Council and I therefore accord it due deference. However, as proffered, it violates constitutional norms by perpetuating the current three-tiered system which this court specifically rejected in its initial decision. Memorandum Decision at 36, 691 F.Supp. 991, 1008 (E.D.La.1988) ("The continuation of the current three tiered arrangement ... bodes little hope for the minority voters of Jefferson Parish achieving electoral equality."). Because the court must adopt the legislative plan if it can specifically reject the deficient parts, the following significant modifications will render acceptable the remainder of defendants' proposed councilmanic structure and district boundary lines.

■ Defendants' proposed quasi-at-large positions for the East-bank and West-bank must be eliminated to avoid the dilution of minority voting strength that was present in the originally challenged plan.[2] Retention of one parishwide seat is permissible, but the proposed nine member council is inappropriate since one third (3 seats) would be essentially (and impermissibly) guaranteed to be "white seats" due to the relatively low overall percentage of blacks (13.1% of the voting age population). As plaintiffs point out in their supplemental memorandum, the floterial districts greatly skew any calculation of deviation from pop-

ulation equality and result in severe malapportionment.[3] *See Morris v. Board of Estimate*, 831 F.2d 384 (2nd Cir.1987) (invalidating malapportioned City Board), *prob. juris. noted,* —— U.S. ——, 108 S.Ct. 1288, 99 L.Ed.2d 498 (1988). In any case, the East-bank/West-bank notion is an anachronism long overdue for dismantling. Spawned years ago in Jefferson Parish politics, this divisive and redundant scheme has few, if any, redeeming features. This is a good time to end it once and for all.

■ The remainder of the plan submitted by defendants has the following characteristics. It has a standard deviation of less than 2.5%, well within the acceptable population deviation of 10%.[4] The black percentage of the total voting population in each of the proposed districts is as follows: district 1, 16.82%; district 2, 8.60%; district 3, 41.26%; district 4, 6.22%; district 5, 1.28% and district 6, 0.79%.

Blacks comprise 11.78% of the voting population of Jefferson Parish. While there are some areas with a heavier concentration of blacks than others, blacks are dispersed throughout the parish. Therefore, neither a safe district nor a single member district with a majority of black voters is required. *See,* Memorandum Decision at pp. 31–33, 691 F.Supp. 991, 1006, and cases cited and reasoning therein.

Defendants include one district (district 3) in which blacks constitute 45.92% of the population, 41.26% of the voting age population. This indicates to me that at least in this district blacks will have a realistic abili-

---

2. That plan selected two quasi-at-large members from the former districts 1 & 2 and districts 3 & 4.

3. As plaintiffs note, the acceptable deviation of 6.6% of absolute population equality that de-

fendants list in their analysis of their plan applies only to the proposed six single member districts.

4. The chart reflecting the population characteristics of defendants' plan is reproduced below:

JURISDICTIONAL TOTAL—454,592

| | |
|---|---|
| IDEAL POP. FOR EACH OF 6 DISTRICTS | 75765 |
| ACCEPTABLE POP DEVIATION | 10.0% |
| ACCEPTABLE POP WINDOW FOR 10.0% DEVIATION | 71977—79553 |
| DISTRICT WITH GREATEST POP | 79220 + 4.56% (DIST 2) |
| DISTRICT WITH LEAST POP | 74216 − 2.04% (DIST 5) |
| POP DIFF BETWEEN LARGEST AND SMALLEST | 5004 |
| TOTAL DEVIATION PERCENTAGE OF PLAN | 6.60 |
| AVERAGE DEVIATION PERCENTAGE OF PLAN | 1.68 |
| DISTRICTS OUTSIDE ALLOWABLE DEVIATION | 0 |
| STANDARD DEVIATION (COUNT) | 1691 |
| STANDARD DEVIATION (PERCENT) | 2.2317 |

ty to influence the outcome of councilmanic elections, and does, I believe, satisfy the concerns expressed in my earlier observations.

Thus, the new council structure would be six members elected from single member districts and one at-large member, a total of seven council seats.[5] All but one presumptively white (parishwide) seat on the council will be eliminated by the court's modification.

5. Plaintiffs submitted six plans for the court's consideration. Five of the plans divide the parish into single member districts with seven to ten council members (two plans with seven districts, two with nine and one with ten) and one plan utilizes six single member districts and one member chosen from the entire parish at-large. This last proposal is similar in structure to the plan chosen by the court. The percentage of blacks and whites in plaintiffs' six and one proposal is as follows:

| DISTRICT | TOTAL | WHITE | %WHITE | BLACK | %BLACK |
|---|---|---|---|---|---|
| 1 | 76,865 | 60,410 | 78.6 | 13,872 | 18.0 |
| 2 | 77,225 | 69,097 | 89.5 | 6,195 | 8.0 |
| 3 | 70,091 | 31,487 | 89.5 | 37,163 | 53.0 |
| 4 | 76,727 | 69,891 | 91.1 | 4.063 | 5.3 |
| 5 | 76,415 | 74,166 | 97.1 | 1,214 | 1.6 |
| 6 | 77,269 | 74,786 | 96.8 | 494 | 0.6 |